IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| RAYMOND WILLIAM GILLMAN, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 4:19-CV-00704-CAN |
| v. | § | |
| | § | |
| COMMISSIONER, SSA, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal for judicial review, under 42 U.S.C. § 405(g), of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for disability insurance benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court recommends that the Commissioner's decision be **AFFIRMED**.

## BACKGROUND

### I. PROCEDURAL HISTORY OF THE CASE

On April 21, 2015,[1] Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB"), under Title II of the Social Security Act [TR 179-80]. By Plaintiff's own admission, he filed an earlier application in September 2012 with an onset date of December 15, 2011 [Dkt. 26]. Such claim was denied. In connection with the instant application, filed in 2015, Plaintiff alleged a disability onset date of January 1, 2012 [TR 179]. Plaintiff acquired sufficient quarters of coverage to remain insured through December 31, 2015 [TR 28].

---

[1] The Commissioner briefs that Plaintiff filed his application on April 17, 2015 [Dkt. 27 at 2], however the administrative record reflects that the correct date of Plaintiff's application is April 21, 2015 [TR 179].

Plaintiff's claim was initially denied on June 30, 2015 and upon reconsideration on September 17, 2015 [TR 116-20, 126-28].   Plaintiff requested an administrative hearing ("Hearing") on September 29, 2015 [TR 129-30].  A Hearing was held before an Administrative Law Judge ("ALJ") on August 10, 2016 [TR 60-95].  At Hearing, Plaintiff, Plaintiff's wife Nancy Gillman ("Mrs. Gillman"), and a vocational expert ("VE") presented testimony [TR 60-95]. Plaintiff was represented by counsel, Michael Sloan [TR 60].  On August 24, 2016, the ALJ issued an unfavorable decision, denying Plaintiff's application [TR 23-41].   On September 7, 2016, Plaintiff requested a review of the ALJ's decision by the Appeals Council [TR 176-78].   The Appeals Council denied Plaintiff's request on August 3, 2017, making the decision of the ALJ the final decision of the commissioner [TR 4-10].  Plaintiff requested an extension of time to file a civil action related to the ALJ's decision [TR 2], which the Appeals Council granted on August 27, 2019, giving Plaintiff thirty days from receipt of their letter to file a civil action [TR 1].   On September 27, 2019, Plaintiff filed the instant suit [Dkt. 1].   On January 15, 2020 the Administrative Record was received from the Social Security Administration [Dkt. 17].  Plaintiff filed his Opening Brief on July 3, 2020 [Dkt. 26].  The Commissioner filed his Brief in Support of the Commissioner's Decision on September 1, 2020 [Dkt. 27], and Plaintiff replied on September 9, 2020 [Dkt. 28].

## II.    STATEMENT OF RELEVANT FACTS

### 1.  Age, Education, and Work Experience

Plaintiff was born on March 30, 1960, making him fifty-one (51) years of age at the time of alleged onset of disability and fifty-six years of age at the time of the ALJ's decision [TR 36, 96, 179].  Plaintiff's age classification at alleged onset was that of "a person closely approaching advanced age," which subsequently changed to "advanced age" by the time of the ALJ's decision

[TR 36]. Plaintiff earned a Bachelor of Science in Business Administration from Mercy College in 1985, and a Master of Library Science from Texas Women's University in 2011 [TR 67-68]. Plaintiff has prior work experience as an IT Analyst [TR 35].

### 2. *Medical Record Evidence*

Plaintiff asserts he is disabled as a result of the following illnesses, injuries, and/or conditions: arthritis in all extremities especially the right hip; thyroid; pre-diabetic, possibly diabetic; back injury; high cholesterol; and high triglycerides [TR 96, 214]. The ALJ found of Plaintiff's alleged conditions that his osteoarthritis, hypothyroidism, diabetes mellitus, and obesity constituted severe impairments [TR 28]. Relevant to the instant appeal is Plaintiff's own Hearing Testimony, as well as the medical evidence of record. The medical evidence of record is sparse and during the relevant time frame there exist only the medical opinions of State Agency Medical Consultants Dr. Robin Rosenstock, M.D. ("Dr. Rosenstock") and Dr. Shabnam Rehman, M.D. ("Dr. Rehman"), and consultative examiners Dr. Mike Lee, M.D. ("Dr. Lee") and Dr. Obiora M. Ekweani ("Dr. Ekweani"). Contained in the record are also medical records from Dr. Bruce E. Maniet, D.O. ("Dr. Maniet") which fall after the expiration of Plaintiff's coverage, for purposes of completeness, the Court also summarizes it herein.

### a. Consultative Examiners – Drs. Lee & Ekweani

On December 11, 2012, Dr. Lee conducted a consultative examination of Plaintiff [TR 304-10]. Dr. Lee noted Plaintiff's past medical condition reflected arthritis, pre-diabetes, mixed hyperlipidemia, and hypothyroidism; and, also that Plaintiff was taking no medication other than aspirin for any of his alleged conditions [TR 307]. Dr. Lee found Plaintiff to be "alert oriented [and] no distress" with "moderate to severe pain over left shoulder, right hip, right ankle, right knee, lower back, both elbows, [and] both hands" [TR 308]. Dr. Lee noted that Plaintiff drove

himself to the exam, arrived at the exam without a walking cane or walker and was able to walk in the exam room and "across the hallway" [TR 308]. Dr. Lee found Plaintiff's gait steady and that he is "able to do heel to toe walking and tandem walking but has difficult and holds on to wall to prevent losing balance and falling" [TR 309]. Plaintiff is further able to "handle objects with his hands without any problem[,]" [TR 309]. Dr. Lee found Plaintiff unable to lift heavy objects, but able to lift and push an office chair weighing about ten pounds [TR 309]. During his upper and lower extremities examination, Plaintiff had full motor abilities and was able to hop and squat [TR 309]. Dr. Lee also ordered x-rays of Plaintiff's lumbar spine and found no intervertebral space narrowing of acute osseous fractures [TR 305]. Dr. Lee concluded that Plaintiff suffers from "chronic pain daily and multiple comorbidities that compromise his quality of life[,]" and moreover, Plaintiff is "unable to work in an office environment on computers due to his high pain level daily and unexpected absences" [TR 310].

On June 23, 2015, Plaintiff was seen by Dr. Ekweani for a second consultative examination [TR 311-316]. Dr. Ekweani found that Plaintiff suffers from: joint pain, distal numbness, paresthesia, morning stiffness in joints, weakness of muscles or joints, back pain, difficulty in walking, and falls [TR 314]. Dr. Ekweani noted, as did Dr. Lee, that Plaintiff was taking no medication for any of his conditions other than aspirin [TR 312]. Plaintiff's BMI was 39.51 at the time of examination [TR 314]. Dr. Ekweani found Plaintiff appeared to be in pain, was alert, obese, and walking with a cane [TR 314]. Plaintiff's gait was antalgic [TR 314]. The x-rays that were ordered by Dr. Ekweani showed that Plaintiff had some narrowing disc spaces at L4 and L5 but that the disc space was preserved at all other levels, moreover, the alignment of Plaintiff's hips was found to be "excellent" [TR 316]. Dr. Ekweani opined that "[e]ven though his xrays are negative, he appeared to me to be in significant pain. An MRI will show if he has

ligamentous/cartilaginous pathologies in the areas of pains.  But he is obviously not able to work as he is currently" [TR 315].

### b.  SAMC Opinions – Drs. Rosenstock & Rehman

On June 25, 2015, Dr. Rosenstock reviewed Plaintiff's medical records in connection with the initial agency determinations of Plaintiff's disability application [TR 100-02].  Dr. Rosenstock found that Plaintiff had two severe medically determinable impairments, osteoarthritis and allied disorders and disorders of back-discogenic and degenerative, which could produce Plaintiff's pain [TR 100].  Dr. Rosenstock found that Plaintiff had exertional limitations, including: occasionally lifting/carrying twenty pounds; frequently lifting/carrying ten pounds; standing and/or walking about six hours in an eight hour workday; sitting about six hours in an eight hour workday; and the same limitations for push/pull as for lift/carry [TR 101].  Dr. Rosenstock further found that Plaintiff had postural limitations, including: frequently climbing ramps and stairs, stooping, kneeling, and crouching; and occasionally climbing ladders, ropes, scaffolds, and crawling [TR 102-02].   Dr. Rosenstock opined that Plaintiff did not have manipulative, visual, communicative, or environmental limitations [TR 102].  Dr. Rosenstock found that Plaintiff's alleged limitations were only partially credible [TR 100].

At the reconsideration level, on September 9, 2015, Dr. Rehman evaluated Plaintiff's records in connection with his application for disability benefits [TR 110-12].  Dr. Rehman found that Plaintiff had exertional limitations, including: occasionally lifting/carrying fifty pounds; frequently lifting/carrying twenty-five pounds; standing and/or walking about six hours in an eight hour workday; sitting about six hours in an eight hour workday; and the same limitations for push/pull as for lift/carry [TR 111].  Dr. Rehman further found that Plaintiff had no postural, manipulative, visual, communicative, or environmental limitations [TR 111-12].  Dr. Rehman

opined that "[t]he symptom-related functional limitations and restrictions cannot reasonably be accepted as consistent with the medical and other evidence in the record" [TR 112].

### c. Treating Physician – Dr. Maniet

Plaintiff was seen by Dr. Maniet beginning on December 1, 2016 [TR 19].  Plaintiff saw Dr. Maniet again on February 2, 2017, at which time Dr. Maniet had blood work done [TR 13-14].[2]  Plaintiff was seen for a follow up appointment with Dr. Maniet on May 8, 2017, at which time he noted that Plaintiff was "getting around well, able to do all [activities of daily living] without difficulty, [and was] stable on feet" [TR 15].  Dr. Maniet further opined that weight loss was necessary and discussed "techniques to decrease dietary intake and regular aerobic exercise program" with Plaintiff at each of his visits [TR 16, 18, 20].  Dr. Maniet instructed Plaintiff to take his diabetes more seriously, directing Plaintiff to monitor his blood sugars regularly and again informing Plaintiff that he "must lost weight" [TR 20].

### 3. *Hearing Testimony*

### a. Plaintiff's Testimony

At Hearing, Plaintiff discussed his educational qualifications and elaborated on his past work as an IT Analyst for 7-11 and (EDS) HP; Plaintiff was laid off from in 2009 [TR 68-69]. After being laid off, Plaintiff attained his Masters in Library Science in 2011, but reported that despite applying to work in multiple positions was never hired [TR 70].  Plaintiff then worked as a substitute teacher in 2013 for Frisco Independent School District but was "kicked out [] of the program" because he was unable to accept enough jobs because of his inability to physically get up [TR 71].  Plaintiff stated he has considered pursuing alternative careers but explained that his hip and back pain are too severe and continue to spread throughout his body [TR 71-72].

---

[2] The Court again makes note that the treatment provided by Dr. Maniet occurred following the expiration of Plaintiff's insurance on December 31, 2015 [TR 28].

Plaintiff attributed his pain to his arthritis and diabetes and testified that because of the pain he is unable to sleep most nights [TR 72].  Plaintiff testified he is able to sit thirty, forty, fifty minutes at a time to do technical tasks in a seat [TR 73], stand for fifteen minutes, and that he can only walk twenty yards at a time with a cane before taking "a breather" [TR 77].  Plaintiff testified that he no longer has any medical benefits and is unable to pay for all of his medical expenses out of pocket [TR 73-74].  Plaintiff confirmed that he has not had an MRI or x-ray within the last three of four years, other than the x-rays performed in connection with his consultative exam [TR 76].  Plaintiff explained that he only takes aspirin to treat his pain [TR 79].  As to a normal day, Plaintiff testified that he spends more and more time at his parents' farm in White Rock, spending most of his week there [TR 82].  Plaintiff explained that in the mornings he takes aspirin and uses Bengay creams on his hands to limber them up [TR 83].  Plaintiff stated that he is usually ready to get up and move around ten to eleven a.m., and then takes care of his parents' goats and chickens [TR 83].  Plaintiff testified that he must walk about twenty yards out and then twenty yards back to take care of the goats [TR 83].  After taking care of the goats and chickens, Plaintiff goes back into the house and relaxes, works on his computer or watches television [TR 83-84].  Plaintiff also testified that he and his wife will also send out her resumes, looking for work for her [TR 84].  Plaintiff's wife's testimony was consistent with his own [TR 80-82].

### b.  Vocational Expert Testimony

The VE offered testimony at the Hearing in response to several hypotheticals posed by the ALJ [TR 85-89].  The VE characterized Plaintiff's previous work as an IT Analyst as "[s]edentary, SVP 7, DOT 032.262-010" [TR 85].  The ALJ then presented the following hypothetical to the VE:

> I'd like you to assume a hypothetical individual with the Claimant's age and education and with the past work that you've described. Further assume the

> individual is limited to the light exertional level, limited to occasional climbing of ramps and stairs, balancing, stooping, kneeling, and crouching. Is precluded from climbing ladders, ropes, and scaffolds and crawling. Could that hypothetical individual perform any of the past work that you've described?

[TR 85-86].  The VE testified that the hypothetical individual could perform all previous past work as an IT Analyst and could also perform the roles of: cashier (DOT 211.462-010), light, SVP 2; assembler (DOT 706.684-022), light, SVP 2; and laundry folder (DOT 369.687-018), light, SVP 2 [TR 86].  The ALJ then posed a second hypothetical to the VE, similar to the first, but asked the VE "to account for the period after the age change to 55" [TR 86].  The VE responded that the hypothetical individual could perform other work, but noted that the work would have to be performed at the sedentary level [TR 87].

The ALJ then asked a third hypothetical, inquiring if a hypothetical individual could perform other work that could be performed with the transferable skills from Plaintiff's past work as an IT specialist [TR 87].  The VE responded that the hypothetical individual could perform other jobs, listing: data entry clerk (DOT 203.582-054), sedentary, SVP 4; timekeeper (DOT 215.362-022), sedentary, SVP 3; and billing clerk (DOT 214.362-042), sedentary, SVP 4 [TR 87]. The VE noted that the transferable skills would likely involve Plaintiff's "knowledge of computers, not necessarily in the software he would be using[,]" but the rudimentary skills of being able to type and enter data [TR 88].

For the fourth hypothetical, the ALJ asked if any job "could be performed with transferable skills from the past work and which would involve very little if any vocational adjustment in terms of tools, work processes, work setting, or the industry" [TR 88-89].  The VE testified that there would be no jobs that the hypothetical individual could perform because the transferable skills would require "more than very little vocational adjustment" because Plaintiff "has not worked in a setting of an office just doing data entry or typing" in many years [TR 89].

On cross examination, Plaintiff's counsel asked a clarifying question as to whether the transferable skills the VE was describing was primarily typing, to which the VE agreed [TR 89]. Counsel then asked, "if the hypothetical individual had to break every 30 to 40 minutes for 15 minutes at a time, would such an individual be able to fulfill any of the jobs you have described to me today?" [TR 90]. The VE responded that the hypothetical individual would not be able to break for that length of time, explaining that it is a basic expectation that typing is done constantly, with at most "five minutes off in an hour" [TR 90]. Plaintiff's counsel then asked whether "the hypothetical individual would be – have to perform eight hours a day, five days a week" [TR 91]. The VE responded, "absolutely" [TR 91]. Lastly, Plaintiff's counsel asked what the maximum number of absences on a monthly basis would be for the jobs the VE described [TR 91]. The VE responded "one day a month" [TR 91].

## III.    FINDINGS OF THE ALJ

### 1.    *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he can perform his past work. 20 C.F.R.

§ 404.1520(e).  Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy.  20 C.F.R. § 404.1520(f).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the Commissioner.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).  If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates.  *Id.*

### 2.    *ALJ's Disability Determination*

After hearing testimony and conducting a review of the facts of Plaintiff's case, the ALJ made the following sequential evaluations [TR 28-37]: At step one, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2015, and that Plaintiff has not engaged in substantial gainful activity since January 1, 2012 [TR 28].  At step two, the ALJ found Plaintiff has the following severe impairments: osteoarthritis; hypothyroidism; diabetes mellitus; and obesity [TR 28].  At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526) [TR 29].  At step four, the ALJ determined Plaintiff has the residual functional capacity ("RFC"):

> [T]he claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except with the following limitations: The claimant is able to climb ramps and stairs on an occasional basis.  The claimant is never able to crawl or to climb ladders, ropes, or scaffolds.  The claimant is able to balance, stoop, kneel, and crouch on an occasional basis.

[TR 32].  Continuing the fourth step analysis, the ALJ found the Plaintiff can perform his past relevant work as an IT analyst [TR 35].  Although not required, despite the finding at step four that Plaintiff can perform his past relevant work, the ALJ made an alternative finding for step five that

"the claimant had also acquired work skills from past relevant work that were transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d))" [TR 36].   The ALJ determined that Plaintiff had acquired transferable skills from his previous work to be able to perform the following jobs: billing clerk (DOT 214.362-042), sedentary, SVP 4; data entry clerk (DOT 203.582-054), sedentary, SVP 4; and timekeeper (DOT 215.362-022), sedentary, SVP 3 [TR 36].   However, the ALJ noted that this step five alternative applies solely to the period before Plaintiff turned fifty-five years old and that for any period after Plaintiff turned fifty-five, the finding of no disability rests solely on Plaintiff's ability to perform past relevant work in step four [TR 37].   Thus, the ALJ concluded Plaintiff has not been under a disability, as defined in the Act, from January 1, 2012, through December 31, 2015, the date last insured [TR 37].

## STANDARD OF REVIEW

In an appeal under § 405(g), the Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1985), *cert denied*, 514 U.S. 1120 (1995); 42 U.S.C. § 405(g).  A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett*, 67 F.3d at 564; *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983).  It is more than a mere scintilla and less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  A finding of no substantial

evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383. Conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

Disability insurance is governed by Title II, 42 U.S.C. §§ 404 et. seq. of the Social Security Administration. The legal standard for determining disability under the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

Plaintiff argues that: (1) the ALJ erred in determining Plaintiff's credibility [Dkt. 26 at 9]; (2) the ALJ erred in determining his RFC and in evaluating the medical evidence; (2) and (3) the ALJ erred in failing to consider the full testimony of the VE [Dkt. 26 at 12].[3] The Commissioner rejoins that: (1) the ALJ conducted a proper subjective complaint evaluation

---

[3] As to Plaintiff's claim that the ALJ was prejudiced against him [Dkt. 26 at 11], there is no basis in the record supporting such allegation. The ALJ's remarks do not indicate that he was predisposed to rule against Plaintiff because of a lack of health insurance and Plaintiff's refusal to use opiates. The ALJ provided a reasoned judgment based on the medical evidence, and Plaintiff's claim that doctors refuse to provide Plaintiff opiates due to his long-term need was not the basis for the ALJ's decision but was rather met with some skepticism. *See Brown v. Apfel*, 192 F.3d 492, 500 (5th Cir. 1999). To show prejudice, the claimant must point "to evidence that would have been adduced and that could have changed the result." *Brock v. Chater*, 84 F.3d 726, 729 n.1 (5th Cir. 1996). Further, this Court will not "reverse the decision of an ALJ for lack of substantial evidence where the claimant makes no showing that he was prejudiced in any way by the deficiencies he alleges." *Id.* The Court finds that the ALJ was not prejudiced against Plaintiff. Plaintiff also argues that the x-rays ordered by Dr. Ekweani were misinterpreted by Dr. Anne M. Glasser, M.D. ("Dr. Glasser"), arguing that his x-rays were not negative but rather showed Plaintiff had "bone spurs" [Dkt. 26 at 8]. However, as the Commissioner correctly argues, the ALJ properly relied upon a physician's expert interpretation of x-rays.

[Dkt. 27 at 5]; (2) the ALJ properly exercised his discretion when weighing the consultative opinions and substantial evidence support the RFC determination [Dkt. 27 at 9]; and (3) the ALJ properly relied on VE testimony that Plaintiff could perform other work that exists in significant numbers in the national economy [Dkt. 27 at 12].

***Credibility Determination/Subjective Complaint Evaluation***

Plaintiff contends he has been prejudiced by the ALJ's failures in evaluating his credibility [Dkt. 26 at 11]. "Contrary to Plaintiff's contention that the ALJ improperly considered his credibility and complaints of pain, [the Government argues] the ALJ performed a subjective symptom evaluation pursuant to the regulations and applicable agency policies" [Dkt. 27 at 6]. Assessing the credibility of a claimant's testimony is part of the symptom evaluation process pursuant to applicable regulations. The regulations have established a two-step symptom evaluation process. First, the ALJ must determine if there are "medical signs or laboratory findings [which] show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b). Thereafter, at step two, the ALJ must evaluate "the intensity and persistence of [the claimant's] symptoms, such as pain, and determining the extent to which [the claimant's] symptoms limit [their] capacity for work." *Id*. § 404.1529(c). In making this determination, the ALJ will "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2017 WL 5180304, at *4 (S.S.A. Oct. 25, 2017). As to the consideration of a claimant's testimony:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other

MEMORANDUM OPINION AND ORDER – Page 13

evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities for an adult or reduce a child's ability to function independently, appropriately, and effectively in an age-appropriate manner for a child with a title XVI disability claim.  In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner.

*Id.* at *8.   Notably, in SSR 16-3P, the Social Security Administration removed the term "credibility" from the agency's sub-regulatory policy, clarifying that the credibility analysis is focused on the regulatory language and is not an examination of a claimant's character.  *Id.* at *1; 20 C.F.R. §§ 404.1529. 416.929.[4]  "The Ruling leaves the ultimate credibility determination to the ALJ's discretion."  *Rodriguez v. Berryhill*, No. CV H-17-3102, 2019 WL 403860, at *11 (S.D. Tex. Jan. 3, 2019) (citing SSR 16-3P, 2017 WL 5180304, at *9), *report and recommendation adopted*, No. CV H-17-3102, 2019 WL 398181 (S.D. Tex. Jan. 29, 2019).   Nevertheless, the ALJ's determination or decision regarding credibility must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.  SSR 16-3P, 2017 WL 5180304, at *10.[5]

---

[4] Although the ALJ was previously required to conduct a credibility analysis when examining a claimant's testimony, in March 2016, the Social Security Administration altered such determination and established the referenced two-step symptom evaluation process, clarifying that the credibility analysis is focused on the regulatory language and is not an examination of a claimant's character.  *Soc. Sec. Ruling 16-3p Titles II & XVI: Evaluation of Symptoms in Disability Claims*, SSR 16-3P, 2017 WL 5180304, at *1 (S.S.A. Oct. 25, 2017).

[5] As reflected by the ALJ's decision, when assessing the credibility of an individual's statements, the ALJ considers, in addition to the objective medical evidence, the following: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, which the claimant receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the claimant uses or has used to relieve pain or other symptoms; and (7) any other factors concerning the claimant's functional capacity, limitations and restrictions due to pain or other symptoms.  20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3P, 2017 WL 5180304, at *7-8.

In the instant case, the ALJ made the determination that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" [TR 33].  The ALJ performed a subjective symptom evaluation pursuant to the regulations and applicable agency policies, stating in relevant part:

> The claimant alleges that he is almost housebound because of his osteoarthritis. This impacts primarily his hips, joints, and his back.  He states he is able to walk only 20 yards and only with a cane.  However, he testified that he spends most of his time at his parent's farm.  There he feeds the goats.  He also looks for work by sending out resumes.  He drives, but testified he limits driving to no more than 45 minutes.  The claimant works on his computer, watches TV, and reads.  He is not able to sit, stand, or walk for very long periods and he has difficulty sleeping.  His wife testified that the claimant tires easily and is easily agitated.  (hearing testimony and Exhibits 1E, 6E and 10E).

> Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c), 416.929(c) and Social Security Ruling 16-3p describe the factors that should be considered when assessing the consistency of the claimant's symptoms with the medical evidence.  The undersigned should consider the objective medical evidence, statements made by the claimant and other individuals, and others factors, including 1) the claimant's activities of daily living, 2) the location, duration, frequency, and intensity of pain or other symptoms, 3) precipitating and aggravating  factors, 4) the type, dosage, effectiveness, and side effects of medications taken to alleviate pain or other symptoms, 5) treatment, other than medication, for relief of pain or other symptoms, 6) any measures other than medication used to relieve pain or other symptoms, and 7) any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments, in order to assess the intensity, persistence, and limiting effects of the claimant's symptoms.

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

> Initially, the objective medical evidence does not reflect disabling level of impairments.  All of the available x-rays are negative for any significant joint impairment (Exhibits 4F, 5F).  The claimant was noted to have a full range of motion in his extremities during his 2012 consultative examination and an

unremarkable physical examination during his 2015 examination (Exhibits 4F, 5F). During both examinations, he was found to have no significant handling or fingering impairment (Id.).  The 2012 examination, however, did note that the claimant did have some range of motion limits in his spine and left shoulder (Exhibit 4F).  On the whole, the limited objective medical evidence does not reflect disabling physical impairments

In addition, the claimant has received limited medical treatment with no private medical treatment from late 2010 until 2016.  During that time, the only medical evidence is from the consultative examinations provided by the Social Security Administration.  The lack of nearly any medical treatment for over 5 years strongly suggests the claimant's impairments are not as severe as alleged.  The claimant also testified that he uses only over the counter pain medications, which suggests that the pain that he suffers is not as severe as alleged.

[TR 32-33].  Of note here, the ALJ properly considered Plaintiff's complaints of pain, using the factors as guidance for his analysis,[6] and finding Plaintiff's allegations involving his physical limitations "are not entirely consistent with the medical evidence" [TR 33].  The ALJ noted Plaintiff's almost total lack of medical treatment for the past five years gives rise to the suggestion that Plaintiff's limitations are not as severe as claimed [TR 33].  And that inconsistent with Plaintiff's allegations of pain are the treatment notes instructing Plaintiff to exercise and Plaintiff's use of only over the counter pain medication [TR 33].  The ALJ concluded that the lack of medical treatment, lack of prescribed pain medications, and the objective medical evidence was not consistent with one who was suffering from constant, debilitating pain [TR 33].  Based upon the medical records in evidence, the Court finds the ALJ's consideration of Plaintiff's testimony,

---

[6] Pain alone may support a finding of disability so the Secretary "must consider subjective evidence of pain as testified to by the claimant." *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981).  Whether pain is disabling is for the ALJ to resolve and is within their discretion to do so which is "entitled to considerable deference." *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *see also Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991).  If supported by substantial evidence, the determination of an applicant's ability to work despite some pain should be upheld. *See Chambliss*, 269 F.3d at 522.  Pain must be constant and wholly unresponsive to therapeutic treatment to be disabling. *See Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1998).  Further, a claimant's subjective reports of pain must be substantiated by objective medical evidence. *See Houston v. Sullivan*, 895 F.2d 1012, 1016 (5th Cir. 1989).  An ALJ may give less weight to a claimant's subjective reports of pain when there are inconsistencies between the claimed impairments and the entire record. *See Vaughan v. Shalala*, 58 F.3d 129, 131 (5th Cir. 1995).  Notably, a claimant's testimony by itself cannot satisfy the medical component of the statutory standard.  20 C.F.R. §§ 404.1528(a), 404.1529, 416.928(a), 416.929.  A claimant's subjective complaint may be discounted when the alleged symptoms are not consistent with objective medical evidence. *See Vaughan*, 58 F.3d at 131.

utilizing the subjective symptom evaluation, to be proper.  The totality of the medical evidence supports the ALJ's finding that Plaintiff's subjective statements about the limiting effects of his symptoms were not fully believable.

### The ALJ's RFC Determination is Supported by Substantial Evidence

Plaintiff further argues that the ALJ failed to consider all of the medical evidence "such as the chiropractor, clinical visits, medication, parking placards and devices" in making his RFC determination [Dkt. 26 at 11].[7]  Upon review, the Court agrees with the Government that "the ALJ properly considered all of the evidence of record in assessing Plaintiff with an RFC for a reduced range of sedentary work, and Plaintiff has failed to show that substantial evidence does not support his determination" [Dkt. 27 at 10].  Generally, the RFC finding reflects a disability claimant's maximum remaining ability to perform work activities despite his or her medically determinable impairments.  20 C.F.R. § 404.1545(a).  "The ALJ is not required to include limitations in the RFC determination that are not supported by the evidence of record."  *Kozlowski v. Colvin*, No. 4:13-cv-020-A, 2014 WL 948653, at *7 (N.D. Tex. Mar. 11, 2014).  The ALJ has sole responsibility for determining a claimant's RFC.  *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).[8]

Here, the RFC determination is supported by substantial evidence.  The only medical opinions and evidence contained in the record that pertain to the relevant period are: consultative

---

[7] Although Plaintiff argues that Dr. Anne Glasser, M.D., interpreted his x-rays incorrectly, no contradicting evidence exists in the record.  Dr. Glasser reviewed Plaintiff's x-rays on June 23, 2015 and found that the "disc spaces are narrowed at L4 L5 but preserved at all other levels" [TR 316].  Dr. Glasser noted that Plaintiff's "[s]urrounding soft tissues are unremarkable[, and] the sacroiliac joints are intact" [TR 316].  As to Plaintiff's right hip, Dr. Glasser opined that there "is minimal degenerative change consistent with age" and the adjacent soft tissues are normal, further finding that the right hip series was negative and recommending a CT or MRI if Plaintiff's symptoms persist [TR 316].  The ALJ did not directly mention Dr. Glasser's interpretation of Plaintiff's x-rays, but does note that "[a]ll of the available x-rays are negative for any significant joint impairment" [TR 33].

[8] To be clear, the task of weighing evidence is the ALJ's, and how to do so is within the ALJ's discretion.  *Pavel v. Saul*, No. 1:19-CV-620-RP-AWA, 2020 WL 4364226, at *3 (W.D. Tex. July 30, 2020) (citing *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001)).

examiners Drs. Lee and Ekweani; and SAMCs Drs. Rosenstock and Rehman.  Plaintiff had no

treating physician during the relevant period.  In the ALJ's decision, he references both the medical

evidence and opinions upon which he relied in making his determination [TR 33-35].  As noted,

*infra*, the ALJ found that the objective medical evidence does not reflect disabling levels of

impairment, and that the limited medical treatment Plaintiff was has received also does not support

his alleged severity of symptoms [TR 33].  In discussing the relevant medical opinion evidence,

the ALJ states in relevant part:

> Turning to the opinion evidence, on June 25, 2015, Robin Rosenstock, M.D.
> reviewed the claimant's file and assessed the claimant's physical impairments.
> Dr. Rosenstock concluded that the claimant's physical impairments would limit the
> claimant to work at the light exertional level.  Dr. Rosenstock also found postural
> limitations at mostly the frequent level.  (Exhibit 1A).

> On September 9, 2015, Shabnam Rehman, M.D. performed a similar review and
> assessment.  Dr. Rehman concluded that the claimant's physical impairments
> would limit the claimant to work at the medium exertional level.

> I give Dr. Rosenstock's opinion great weight because the doctor has specific
> program knowledge and the opinion is consistent with the record as a whole.  I give
> Dr. Rehman's opinion partial weight because the limitations are not consistent with
> the consultative examination reports of osteoarthritis and reduced range of motion
> in some joints.  Also, the claimant's use of a cane suggests that his exertional
> limitation is closer to sedentary than light or medium.  In deference to the claimant's
> symptoms, I believe the above listed limitations are warranted.  These opinions
> otherwise support an even greater capacity than the above physical RFC.

> On December 11, 2012, the claimant underwent a consultative examination with
> Mike Lee, M.D.  Dr. Lee noted that the claimant was alert and oriented and in no
> distress.  He appeared to be in moderate to severe pain over left shoulder, right hip,
> right ankle, [r]ight knee, lower back, both elbows, both hands.  His affect was
> appropriate during the exam.  He came to the clinic walking without a walking cane
> or walker, although he has to walk slower though due to pain.  He was able to walk
> in the exam room and he was able to walk across the hallway.  The claimant had
> severe cervical tenderness, however, he said he injured himself by falling over a
> tire the previous week.  Both his upper and lower extremities exam was normal
> with full motor and no sensory deficits.  He was able to handle objects with his
> hands.  He did have crepitus in the ankles.  There was no superficial redness or
> cellulitis and no muscular atrophy, although he did walk slowly.

Dr. Lee concluded that the claimant suffers chronic pain and suffers from multiple comorbidities. Dr. Lee concluded the claimant was unable to work in an office environment on computers because of his pain and likely absences. (Exhibit 4F). I give Dr. Lee's opinion as to the claimant's ability to work no weight because it is not merely a medical opinion, but is also a legal opinion. This finding is completely within only my province, and obtains no special significance. However, I did carefully and fully consider the physician's opinion, albeit, as that opinion has been bound within the sphere of the regulatory factors. (42 CFR § 404.1527 and § 416.927).

I give partial weight to Dr. Lee's opinion regarding the nature and severity of the claimant's symptoms. In forming this opinion, Dr. Lee relied almost entirely, if not exclusively, on the claimant's subjective reports of pain. However, pain alone is not enough to support a finding of disability (SSR 96-7p). Dr. Lee's report does not contain any substantial discussion to support his decision. Moreover, his objective findings do not support his conclusion as to the claimant's functional ability. Dr. Lee notes that the claimant's spine x-ray was negative, that the claimant had no sensory deficit, and no handling and fingering limitations. Dr. Lee noted spinal tenderness and a reduced range of motion in the claimant's spine and left shoulder. These limited negative findings are not consistent with the conclusion that the claimant is unable to work in an office setting. As such, I give only partial weight to Dr. Lee's opinion.

On June 23, 2015, the claimant underwent a consultative examination with Oabiora Ekweani, M.D. Dr. Ekweani noted that the claimant was suffering from pain in his back, hips, hands, and feet. Dr. Ekweani noted the claimant has no radiation, numbness, or muscle weakness. He had no glandular or hormone problem, no excessive thirst, no excessive urination, but did have excessive sweating. He had no heat intolerance, no cold intolerance, no skin becoming dryer, no change in hat or glove size, no sleep disturbance, and no hair loss. The claimant had joint pain, distal numbness, and paresthesia, but no distal weakness and no joint swelling. He had problems with falls and morning stiffness in his joints and weakness of muscles or joints. But he had no muscle pain or cramps no cold extremities, and no numbness or tingling sensations, no tremors, and no paralysis/weakness. He has no sleep disturbances.

Dr. Ekweani[] stated that while the claimant's x-rays were negative, he appeared to be in significant pain and that he was not able to work has he currently was. I give partial weight to this opinion, for many of the same reasons applicable to Dr. Lee's opinion above. Subjective reports of pain, unsupported by objective imaging or clinical findings, are not enough to support a finding of disability. Dr. Ekweani[]'s examination of the claimant was generally unremarkable with an antalgic gait and some abnormal walking being the most notable negative findings. The conclusion that the claimant's pain is so severe that he is unable to work is not entirely consistent with Dr. Ekweani[]'s own findings, the limiting imaging, the limited treatment record, and the lack of prescription pain medications noted above.

> However, Dr. Ekweani[]'s observations regarding the claimant's pain is entitled to
> some weight as it is consistent with the claimant's own subjective allegations.

[TR 33-35].

The ALJ extensively recounted the findings of all examiners and elaborated the reasons for

giving no weight or some weight to each of their conclusions [TR 33-34].  Thus, contrary to

Plaintiff's assertion, upon review, the record reflects the ALJ considered all the medical evidence

and gave weight to each of the medical opinions in the record.  Again, an ALJ need only

incorporate the limitations that are "consistent with the weight of the evidence as a whole."

*Hernandez v. Astrue*, 278 F. App'x 333, 338 (5th Cir. 2008) (finding that the ALJ properly

determined the plaintiff's RFC in relying on all of the medical evidence as a whole, rather than

relying on specific limitations set forward by individual physicians).  Furthermore, although

Plaintiff contends that Dr. Lee's opinion establishes that Plaintiff is unable to work, the

Government correctly asserts that Dr. Lee's opinion related to Plaintiff's ability to work is an

"issue reserved to the Commissioner" [Dkt. 27 at 10].  *See Joyce Ellen A. v. Berryhill*, No. 3:17-

CV-2445-B-BT, 2019 WL 462778, at *4 (N.D. Tex. Jan. 16, 2019) ("Dr. Salmon's opinion that

Plaintiff is 'unable to work' is not a medical opinion.  The determination of whether Plaintiff is

'unable to work,' and, therefore, disabled is a legal conclusion reserved for Commissioner.")

(citing *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003), *report and recommendation*

*adopted*, No. 3:17-CV-2445-B-BT, 2019 WL 459978 (N.D. Tex. Feb. 6, 2019); *Tyler v. Saul*, No.

4:19-CV-00187-O, 2020 WL 4462527, at *4 (N.D. Tex. Aug. 4, 2020) ("Whether or not [plaintiff]

should go on disability, is disabled, and has the capacity for work are not medical opinions, but

legal and administrative ones.  In fact, these are the very legal determinations that are 'reserved to

the Commissioner.'") (citing 20 C.F.R. § 404.1527(e)).  Thus, Dr. Lee's opinion that Plaintiff is

"unable to work" [TR 310] is not determinative and properly disregarded by the ALJ; whether or

not Plaintiff is able to work is reserved wholly to the province of the Commissioner.  In sum, the medical evidence of record establishes that Plaintiff received little to no treatment during the relevant time period, was treating his pain with only over the counter medications and was advised on multiple occasions to exercise.  The evidence of record supports the ALJ's RFC for sedentary work with additional limitations and Plaintiff fails to show error.

### VE Testimony

Plaintiff lastly contends that the ALJ did not consider the totality of the VE's testimony [Dkt. 26 at 12].  Particularly, Plaintiff argues the ALJ failed to consider the testimony of the VE during cross-examination, that a hypothetical individual would not be able to perform any of the jobs that the VE listed if they required frequent breaks [Dkt. 26 at 12].

It is the ALJ's prerogative to weigh and consider the testimony provided by a VE.  "The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed."  *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).  And once the ALJ finds jobs in the national economy that are available to Plaintiff, "the burden then shifts back to [Plaintiff] to prove that he is unable to perform the alternate work."  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (citing *Fraga v. Bowen*, 810 F.2d 1269, 1302 (5th Cir. 1987)).  To be clear, the ALJ is not bound by VE testimony which is based on evidentiary assumptions ultimately rejected by the ALJ.  *Brooks v. Comm'r of Soc. Sec.*, No. CV 15-2280, 2016 WL 6436791, at *11 (W.D. La. Sept. 26, 2016) (citing *Owens v. Heckler*, 770 F.2d 1276, 1282 (5th Cir. 1985)), *report and recommendation adopted*, No. CV 15-2280, 2016 WL 6465345 (W.D. La. Oct. 28, 2016).

Here, the VE testified that Plaintiff could perform his past relevant work [TR 86], and also that a hypothetical individual, with Plaintiff's limitations, could perform the jobs of: data entry

clerk (DOT 203.582-054), sedentary, SVP 4; timekeeper (DOT 215.362-022), sedentary, SVP 3;

and billing clerk (DOT 214.362-042), sedentary, SVP 4 [TR 87].   The ALJ relied upon this

testimony in making his decision, stating in relevant part:

> The VE testified to a hypothetical individual with the same vocational profile as
> the claimant in terms of age, education, and work experience.  The VE assumed
> that this individual could perform work consistent with the residual functional
> capacity set forth above.  The VE testified that with these limitations, this individual
> could perform the claimant's past relevant work as an IT analyst.
>
> ***
>
> The vocational expert testified that the claimant's past relevant work as an IT
> analyst was skilled with a specific vocational preparation (SVP) code of 7 and
> required the following skills: knowledge of computers and typing and data entry
> skills.
>
> ***
>
> I asked the vocational expert whether there were occupations that could be
> performed by an individual having the same age, education, past relevant work,
> transferable skills, and residual functional capacity as the claimant had through the
> date last insured.  The vocational expert responded and testified that representative
> occupations such an individual could have performed include:

| JOB TITLE | DOT | SVP/EXERTIONAL LEVEL | NUMBER OF JOBS IN NATIONAL ECONOMY | |
|---|---|---|---|---|
| | | | NATIONALLY | REGIONALLY |
| Billing Clerk | 214.362-042 | 4/Sedentary | 168,000 | 8,800 |
| Data Entry Clerk | 203.582-054 | 4/Sedentary | 625,000 | 46,000 |
| Timekeeper | 215.362-022 | 3/Sedentary | 193,000 | 13,000 |

> Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is
> consistent with the information contained in the Dictionary of Occupational Titles.

[TR 35-37].  The ALJ determined that Plaintiff, along with being able to perform his past relevant

work, was also capable of performing jobs which existed in significant numbers in the national

economy [TR 36].  Though not required based upon the finding that Plaintiff can perform his past

relevant work, the ALJ continued to Step Five [TR 36].  Although, the VE's response to the

hypothetical asked by Plaintiff's attorney during cross-examination stated that an individual who

missed work frequently or needed to take frequent breaks would not be able to maintain

competitive employment, this is not controlling. *Wallace v. Colvin*, No. 1:16-CV-00706, 2017 WL 3038159, at *11 (W.D. La. June 23, 2017) ("Although the VE testified in response to a hypothetical question from Wallace's attorney that there were no jobs available to someone who would miss up to a day of work a week due to headaches, there was no objective evidence in the record supporting this limitation, just Wallace's testimony at the hearing.  The ALJ is not bound by VE testimony based upon hypothetical assumptions[.]"), *report and recommendation adopted*, No. 1:16-CV-00706, 2017 WL 3038137 (W.D. La. July 17, 2017).  The ALJ found that the "objective medical evidence did not coincide with the hypothetical assumptions posed to the vocational expert" and ruled accordingly.  *Id.*  Considering this, the Court rejects Plaintiff's argument that the ALJ improperly considered the VE testimony.

**CONCLUSION**

Based on the foregoing, the Court finds that the Commissioner's decision should be **AFFIRMED**.

**IT IS SO ORDERED**.

 **SIGNED this 30th day of March, 2021.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE